JOURNAL ENTRY AND OPINION
Appellant, Rita Mingo, is appealing her conviction after a bench trial for aggravated arson. For the following reasons, we affirm.
Crystal Willis testified that she lived on the first floor of a two family house. Appellant lived on the second floor. On August 12, 1999, appellant told Willis that on August 13, a man would drop off keys to a moving van. Willis told appellant she planned to leave at 12:30 p.m. Willis promised to get the keys for appellant if the man came before 12:30 p.m.
Willis further testified that shortly before noon on August 13, Pierre Prince knocked on her door. Prince was the babysitter for appellant's children. Prince asked Willis if she was going to wait for the keys. Willis said she would. Prince said she could go back to sleep. Willis went back to sleep, and slept through 12:30 p.m. The next thing she knew, the Orkin guy was knocking on her door. The Orkin guy said her house was on fire. Willis took her baby and ran out of the house.
Willis testified that appellant owned a stove, refrigerator, table, living room set, children's beds and a TV. Appellant told Willis she was going to buy another living room set, and throw out the old one. The condition of appellant's furniture was fair to poor. The lock on appellant's back door was broken, and anyone could get in. The landlord, Leonard Bates, was there the morning of August 13, to collect rent.
Pierre Prince testified that on the evening of August 12, 1999, appellant asked him to set fire to her house, because she was being evicted. Appellant said she would pay him $60 to set the fire. That night, he and appellant walked over to the gas station.
Appellant put $2.00 of gas into her gas can.
Prince further testified that on August 13, appellant's children were at the rec center, and appellant was at work. Around noon, he knocked on Willis' door and asked if she was going to be there. Willis said she was leaving for an appointment. On direct, Prince said he did not know anything about keys for a van. On cross-examination, Prince said he asked Willis about the van keys.
Around 12:45 p.m., Prince set the fire. He shook all the gas in the gas can over appellant's living room floor.
Prince testified that appellant had a stereo, TV, VCR and Super Nintendo. These items were gone when he set the fire. There were no moving boxes in the apartment when he set the fire. Appellant never told him she was going to move.
In August, Prince told the police that appellant offered him $60 to start the fire, but he refused. He lied in his statement, saying that he told the Orkin man that Willis and her child were still in the house. Around November or December he confessed to the police. Before he confessed to the police, Prince told appellant's boyfriend, Richardson, that appellant offered him money to set the house on fire.
A case is pending against Prince in Juvenile Court. He was not promised anything for his testimony in appellant's case.
Leonard Bates testified that in August, 1999, appellant was three months behind in her rent. Appellant had also done a lot of damage to the apartment. A few weeks before the fire, Bates told appellant he was going to evict her.
Lieutenant Schroeder of the Cleveland Fire Department testified that she took appellant's statement on August 24, 1999. Appellant said she planned on moving the weekend of the fire. Mike Stevens was lending her a truck. She was only one month behind on the rent. The landlord was going to use her security deposit for the last month's rent. Appellant said she did not know she received an eviction notice. She loaned the Play Station to a child named Daniel. Appellant received $460 in assistance from the Red Cross after the fire.
Lt. Schroeder also interviewed appellant's children. The children said they had no plans of moving before the fire. The children said they saw the eviction notice.
Lt. Charles Cummings of the Cleveland Fire Department testified that two gallons of gasoline would burn a hole in the floor. In this case, the fire did not burn a hole in the living room floor. There was more damage to the hallway than the living room. The firefighters would likely smell the gas if two gallons were used, but they did not. The official investigation concluded that a small amount of accelerant was used, and the fire was started on the stairs. The firefighter's report also states that the VCR was missing from the apartment. Cummings did not see any moving boxes in the apartment.
Cummings interviewed appellant on August 16, 1999. Appellant stated she planned to move in the future, but not that weekend. She said she had not found a new place to live.
Appellant testified that she did not know she was going to be evicted. She was planning to move the weekend of the fire. There were packed moving boxes in her apartment at the time of the fire. She put a $400 deposit down on a place near East 150th and Kinsman. She did not know the address of the new apartment, because it burned in the fire. She never got her deposit money back. She did not offer Prince money to set fire to the house. She never bought gas with him, and she does not even own a gas can. The Play Station and Nintendo were borrowed from friends, and she had returned them. On cross-examination, appellant admitted she was behind on her rent. Her landlord said he was going to evict her, but she did not take him seriously.
 I.
Appellant's first and second assignments of error are inter-related. They state:
 THE JURY'S VERDICT WAS AGAINST THE SUFFICIENCY OF THE EVIDENCE IN VIOLATION OF MS. MINGO'S CONSTITUTIONAL RIGHTS.
 THE TRIAL COURT ERRED IN DENYING THE MOTION FOR ACQUITTAL.
When reviewing a challenge to the sufficiency of evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 520, State v. Jenks (1991), 61 Ohio St.3d 259.
The elements of aggravated arson are: a person knowingly, by means of fire or explosion, creates, through an agreement for hire, a substantial risk of physical harm to an occupied structure. R.C. 2909.02. Appellant contends that Prince's testimony that appellant hired him to start the fire was not credible. In reviewing sufficiency, this court does not assess the credibility of witnesses. See Jenks, supra; State v. Thompkins (1997), 78 Ohio St.3d 380; State v. Mills (1992), 62 Ohio St.3d 357,368. The evidence was sufficient for a rational trier of fact to find each element of aggravated arson.
Accordingly, these assignments of error are overruled.
 II.
Appellant's third assignment of error states:
 THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In determining if a conviction is against the manifest weight of the evidence, the appellate court reviews the record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Martin (1983), 20 Ohio App.3d 172, citing Tibbs v. Florida (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652. The court should consider whether the evidence is credible or incredible, reliable or unreliable, certain or uncertain, conflicting, fragmentary, whether a witness was impeached and whether a witness had an interest in testifying. State v. Mattison (1985), 23 Ohio App.3d 10. The credibility of a witness is primarily an issue for the trier of fact, who observed the witness in person. State v. Antill (1964), 176 Ohio St. 61; State v. DeHass (1967), 10 Ohio St.2d 230.
Appellant asserts that Prince's testimony was not credible. Prince's initial statement to the police contained many falsehoods. Even in this early statement, Prince said appellant offered him money to set the fire. Prince's explanation of how he started the fire was contradicted by the physical evidence. Prince had a motive to testify to attempt to get leniency in his juvenile court case. Prince said he was not offered any deals for testifying. Prince and appellant were friends and he had no animosity towards her.
The locks were broken, and anyone could have gotten into the apartment. The landlord was present that morning.
Appellant testified that she did not hire Prince to set the fire. Some of her possessions were destroyed in the fire. These possessions were in poor or fair condition and appellant intended to replace some of them. Some items were removed before the fire.
Appellant told Lt. Cummings she had no plans to move, but a few weeks later told Lt. Schroeder she planned on moving that weekend. Appellant's children told Schroeder they were not planning on moving. Appellant's story about the new apartment was suspicious, because appellant did not attempt to get her $400 deposit back. The firefighters did not see any moving boxes, although appellant insisted her possessions were boxed up.
Appellant denied knowing about the eviction, but the children told Schroeder they knew about it. Appellant admitted the landlord threatened eviction. Appellant clearly had an interest in testifying.
While there were inconsistencies between Prince's testimony and the physical evidence, Prince consistently stated that appellant offered him money to set the fire. Appellant's testimony had numerous inconsistencies and incredible statements. We can not say that the trial court lost its way in determining that Prince was credible, but appellant was not.
Accordingly, this assignment of error is overruled.
The decision of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ____________ ANN DYKE, J.